Thank you. Your honors, may it please the court. My name is Morgan Russell for the petitioner Denora Enriquez. This is a review of the Board of Immigration Appeals denial of the petitioner's applications for asylum, withholding of removal and protection out of the convention against torture. The agency's main reason for denying asylum was that the harm the petitioner feared, being kidnapped, tortured and murdered by the MS-13 gang in El Salvador, could not be on account of a protected ground because it was related to extortion. The government no longer defends that basis, which seems correct under this court's decisions in Rios, Ayala and Barajas. So turning to the issues that are still before the court, I think after going back through this court's decisions involving death threats by violent groups, I would say that I don't think the record would compel a finding of past persecution, as was argued in the opening brief. So that I would concede. I'm thinking of this court's decisions in Lim from 2000, Hoxha from 2003 and Canales Vargas from 2006. Under those same cases, though, I think the record does compel the conclusion that Ms. Enriquez's fear, based on those death threats from this violent group, is reasonable. Counsel, with respect, I have no doubt that having memos, notes of that nature would be very, very scary. But the fact is, no member of her family, she, no one was physically harmed in any way. Do you agree with that? Yes, that's as far as she knows, that's right. Okay, as far as you know. Well, certainly there's nothing in the record. Sure. When she, when they complained to the police, the police investigated. They found there was some MS-13 folks that were in jail. They didn't just forget it, they actually tried to do something. It's a big problem down there. But the reality is, persecution involves someone, in this case, she would have had to have something physically bad happen to her. And nothing did. Nothing happened to her family. When they moved to another location, nothing happened there. So I, you know, with respect to her, I'm sure it's a horrible situation, but it doesn't meet the requirements of our law, does it? Well, so, as I said, I'm not arguing that she suffered past persecution now. She wasn't physically harmed, so I'm not saying it was past persecution based on the threats. The question for whether her fear is well-founded is whether a, quote, reasonable person subject to these threats would fear that the threats would be carried out. That's from this Court's decision in Lim. But do you have any case, and Lim's quite distinctive in this case, so do you have any case that would be on all fours with this situation, where your client is here, her family is safe, no one's ever been harmed, where relief has been granted of the type that you seek? So I don't know that there's a case that's sort of on all fours, both with the threats coming from a group as violent as this and the family being safe in another location in the country for this kind of period of time. I mean, there's not that case that this case falls directly under with those sort of different areas. One point that I would make is that, you know, the IJ's reasoning. So the question is, so there's the question of reasonableness and there's the question of relocation, right? The question of reasonableness is would a reasonable person fear that the threats would be carried out? This is a low standard, as the Court said, in Canales-Fargas. For a group like this that's demonstrated killers, that the record shows kill frequently, get away with it, are not under, cannot be stopped by the police in the country, that's just like the shining path in Canales-Fargas. Well, I think that's why it's significant that the IJ said that the fact that her father and family have remained safely in the country significantly undermines her assertion that the gang was motivated by family membership and extortion, right? The fact that they remain safe, doesn't that undercut her claim of future persecution? Well, yes, but I would, so there's certainly a case law saying that where the family remains safe, that can undermine the reasonableness. So here, one point on that is that, like I was saying, I think here the IJ's reasoning and the Board's reasoning was that the family seems to have been able to avoid harm by relocating to another town. And so the IJ says that undermines her, the reasonableness of her fear, and sort of muddles that with the nexus analysis, which isn't before the Court. But in doing so, also muddles together the reasonableness of her fear, whether a reasonable person in her situation would have the fear that she has. With respect, and this is lamentable, there are several countries in Central America, Mexico, from time to time in Peru and other places where people live in fear of gangs. That's a sad fact. But our law does not countenance giving all of them the right to come here because they fear that they might at some future point be the victim of a gang. Isn't that right? Well, that's right, but I think the challenge, I mean, I think the real limitation there is as to nexus, and that's not before the Court anymore. I understand that, but I'm just putting the nexus issue to the side. Right. It seems to me, if I'm understanding you correctly, you're saying your client has suffered no past persecution. You concede that. You also concede the fact that her family can move safely within the country without having any physical harm come to them also under cuts or position. But you're saying because MS-13 exists, she has a reasonable fear of future persecution. That could be said of every member, every person in the whole country, couldn't it? I don't think that's true at all. So she was specifically threatened by name, by this violent group. That sets her apart from — The reason was economic. They wanted money. They were trying to extort money. Again, you're talking about nexus, Your Honor, and that's not before the Court. Correct. But what I was trying to ask you, and I did it imperfectly, is that it's true the IJ somewhat muddled that analysis with the nexus, which is now no longer before us. But there's still a factual finding that her family stayed safe despite the fact that they were also threatened. I don't think the government is disputing her subjective fear. Right. But reasonable fear of persecution also has an objective reasonableness requirement. Now, what's in your favor is that it only has to rise to 10 percent in order to demonstrate fear of future persecution. But when you're talking about a situation where a gang has targeted an entire family, yes, she was named specifically versus her siblings, for example, but they also threatened to carry out harm and death to other family members. So the fact in the record, setting aside the nexus analysis by the IJ, the fact in the record that her family did relocate but yet nobody was harmed, that substantially undercuts the objective reasonableness of her fear. Now, we can debate whether she still has that 10 percent level or not in order to establish objective reasonableness in terms of fear of future persecution. But the fact that they remain safe all this time does substantially undercut your case, doesn't it? So two points. One is, like your Honor just said, the agency's determination was that by relocating, her family was able to seems to have been able to avoid harm. And so the reasonableness question and the relocation question are distinct under the regulations and under this court's law. So the question of whether her fear is reasonable, I just don't see how anyone could say that a reasonable person would not fear for their safety in this context after having been repeatedly threatened for death by a group that carries out murders all the time in executing threats just like this. As to relocation, the board in 2016 acknowledged that there hadn't actually been a specific finding on relocation. So I think the court should hold that the record compels that her fear is reasonable and remand for an actual determination as to whether she can relocate somewhere else. And there, the fact that her family seems to have been able to relocate in order to avoid the threats, that would be evidence that would bear on that. But in terms of whether it's a reasonable person would fear for their life in this situation, I think the record does compel that they would, under this court's case law, looking at similarly violent and ruthless groups like this. I want to ask you, I thought they returned to the original town. So they went away for a month to one town, and they went back to Lolotike, where they had lived. And then about a year and a half before she testified in her hearing, which was, she testified August 2012, year and a half sort of beginning 2011, they moved to another town of Zakatakaluka. And so it's really that period of a year and a half, them being unharmed in Zakatakaluka, a few hours away from where they had first lived, that's the period that the IJs and the agency is saying shows that her fear is not reasonable. And I think if you look at this court's decision in Kaiser, in Lim, in Kanalis Vargas, there was much longer periods of someone who had been specifically threatened themselves living in safety in the country of origin without the threats being carried out. And this court said that that was not enough to make the fear unreasonable. I have one more question I want to ask you. Sure. This business of her being a returning deportee, is that the word? Is there any evidence in the record that shows that such people are treated differently by this gang? Yes, there is evidence in the record cited in the opening brief. I think it's around page 324, 322, 324 of the record, in which there's an analysis from a researcher who studies gangs in Central America and says that people who are returning deportees are at even greater risk, that the gangs' networks sort of contract them when they return to the country and that that's sort of another trigger. I was wondering if there was anything about this particular town and this particular segment of the gang. This particular town as returning deportees? No, I don't believe so. Okay. All right, thank you. Other questions on this? Thanks very much. Thank you very much, Counsel. We'll hear our argument now from the Governor. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the acting U.S. Attorney General. I agree there's no past persecution in this case, and I agree that the nexus issue should not be before the Court in this matter. So you ought to concentrate on the well-founded fear issue, which the government contends the standard has not been met. It's not objectively reasonable for the petitioner in this case to fear harm, where she has never personally been harmed, her family members have not been harmed, and it's quite clear that there is no case on all fours in which this Court has found, under similar circumstances, that someone has established a well-founded fear based on these types of death threats. Do you agree that our cases that do deal with death threats have other components to them, where people have the violence and so on, has occurred, there has been an increase, and there has been physical results, not just talk? I do agree that even though the Court has said that death threats alone could establish past persecution or a well-founded fear, in none of the cases I reviewed were there, in fact, just death threats. There were other components, so a physical confrontation, a close physical confrontation, or family members or other people who were similarly situated who had, in fact, been harmed. And in that very case where that language was used, there was such a physical confrontation, was there not? Yes, that's accurate. What about Canales-Vargas? There was no physical violence in that case. I think that was a threats alone case, wasn't it? That's correct. That was the Shining Path case from Peru. I think what distinguishes that case is that there's no indication in Canales-Vargas that there were any family members remaining in Peru who were unharmed. That's a very distinct difference between that case and the one before the Court here. I'd like to ask you about this deportee business. What are you doing with that allegation in this case and in general? In this case, the issue of her being a deportee was really not specifically raised until the brief before this Court. There is some evidence that in some cases deportees are, in fact, targeted upon return, but those cases seem or the information seems to concentrate on people who were recruited by gangs or were sort of the target of the gangs, and here that seems a little bit attenuated. The target actually seems to be her father, and she's being used and other family members were being used in the threatening letters as sort of leverage to get him to pay. It doesn't seem like a case that's similar to those where there was some sort of direct retaliatory anger. I don't think she angered the gang in any way. You said he didn't raise it until his brief, but it wasn't before. Are you saying it's an unexhausted argument? I would argue it's unexhausted. Under this Court's case law, I could understand why the Court might disagree because there's a distinction between issues and arguments, but I'm letting you know this argument was not made, and so it's not surprising that the agency The issue was raised because the evidence was presented in this report. Correct. I see. All right. Thank you. Nobody's, well, the Convention Against Torture claim didn't seem to have been discussed previously, but the government would urge the Court to also uphold the finding that she didn't establish entitlement to torture convention protection here. So what's happening with the withdrawal claim? That's either going with the asylum claim, whichever direction it goes in? That's correct, Your Honor. All right. I have no other questions. If you have no further questions, the government asks that you deny the petition for review. Okay. Thank you. The case just argued is submitted. We thank counsel for their argument.
judges: M. Smith, Nguyen, Restani